J-S02027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH RADZIEREZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELAINE KUNKLE | : | |
| | : | |
| Appellant | : | No. 1157 EDA 2024 |

Appeal from the Judgment Entered June 10, 2024
In the Court of Common Pleas of Monroe County Civil Division at No(s):
002277-CV-2021

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 22, 2025**

Appellant, Elaine Kunkle, appeals from the June 10, 2024 entry of judgment following the jury's verdict in favor of Appellee, Joseph Radzierez, on claims relating to the sale of real property.  Upon careful consideration, we conclude that we do not have jurisdiction to review the order as it was not a final order disposing of all claims and all parties.  Accordingly, we quash this appeal.

From approximately 2015 to 2020, Appellee and Appellant were "romantically involved."  Trial Ct. Op., 4/23/24, at 3.  In the midst of a foreclosure on Appellee's house, they bought a dilapidated house at 1920 Donalds Road in Effort for $13,245.00 ("the Property"), with a $15,000 loan from Appellee's friend.  They listed only Appellant's name on the deed.  Appellee claims that he, with assistance from his friends and associates, renovated the Property.

The parties separated in November 2020. Soon after, Appellant placed the house for sale, allegedly without Appellee's agreement. On November 20, 2020, Appellant alleges that Appellee assaulted her and caused her emotional distress, while potential buyers were viewing the house.

Appellant subsequently sold the house for $95,000. Appellant eventually repaid the loan but did not transfer any of the funds to Appellee.

On May 6, 2021, Appellee filed a complaint claiming breach of contract, unjust enrichment, fraud, and conversion relating to the sale of the Property. Appellee claimed that they had an oral agreement for any future sale of the Property whereby Appellant would receive one-third of the sale proceeds and he would receive two-thirds of the proceeds given his work in renovating the Property.

In response, Appellant denied the oral contract and instead claimed that they had a November 11, 2020 written agreement that Appellee would receive only $29,000 of any proceeds. Appellee contested the validity of the written agreement, claiming that he did not sign it. According to the trial court, Appellant "made several different claims regarding that agreement." Trial Ct. Op. at 4.

Appellant counterclaimed for, *inter alia*, breach of contract (relating to veterinary bills), unjust enrichment (relating to veterinary bills), and tort damages based on the alleged assault and intentional infliction of emotional distress on November 20, 2020.

- 2 -

During a July 21, 2022 hearing, Appellee sought to "sever" Appellant's tort claims from his breach of contract claims relating to the sale of the house. N.T. Hr'g, 7/21/22, at 25. On August 3, 2022, the trial court granted Appellee's "motion for severance." Order, 8/3/22. In so doing, the court recognized that the matters involved in the two sets of claims were "substantially different" and that Appellant's claims for "assault and emotional distress could distract the jury from deciding the merits of the breach of contract [claims]." *Id.* at 1. Additionally, the court emphasized that the contract claims were "essentially ready for trial" whereas discovery continued on the tort claims. *Id.* The court opined that the litigation of the contract claims did not need to be delayed by the tort claims. Notably, despite the severance order, the court did not divide the claims into separate dockets.[1]

In a separate order entered the same day, the trial court detailed "new case management deadlines" for both sets of claims. Order, 8/3/22. Paragraph A of the order placed Appellee's "breach of contract claims and [Appellant's c]ounterclaims for unjust enrichment, fair market rental value, and unpaid veterinary bills" on the "November 2022 Trial List." *Id.* Paragraph B placed Appellant's counterclaim for "assault and [] infliction of emotional distress" on the "May 2023 Trial Term" and set deadlines for discovery, expert reports, and dispositive motions. *Id.*

---

[1] Indeed, the docket sheet before this Court for 002277-CV-2021 includes filings and orders relating to both sets of claims continuing at least until Appellant's April 2024 notice of appeal to this Court.

- 3 -

Appellant appealed the severance order, but this Court quashed her appeal on November 23, 2022. ***Radzierez v. Kunkle***, 2224 EDA 2022 (Pa. Super. filed Nov. 23, 2022).

On December 7, 2023, following a two-day trial, the jury returned a verdict in Appellee's favor of $48,751.00 on his breach of contract claim and $12,000 on his fraud claim. The jury found that Appellee did not prove his conversion claim and that Appellant did not prove her claims related to the veterinary bills.[2] On December 18, 2023, Appellant filed a post-trial motion raising 18 issues. While the motion was pending, Appellant filed a notice of appeal on April 16, 2024, 120 days after filing her post-trial motion.

On April 23, 2024, the trial court issued an order denying Appellant's post-trial motion. In conjunction with the order, the court issued a 49-page "Opinion/1925 Opinion," addressing Appellant's post-trial issues. The court acknowledged Appellant's notice of appeal and observed that her post-trial motion could have been denied by operation of law, in which case, the court stated, the opinion "shall serve as a [Rule]1925 opinion, if necessary." Trial Ct. Op. at 2. On the same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of issues on appeal. We find no indication in the record or on the docket sheet that Appellant filed a Rule 1925(b) statement with the trial court. Rather, Appellant attached a Rule 1925(b) statement, dated May

_____

[2] The trial court did not address Appellee's unjust enrichment claim in light of the jury's favorable verdict on his breach of contract claim. Trial Ct. Op. at 1.

- 4 -

13, 2024, to her Docketing Statement filed in this Court on May 15, 2024. She additionally attached a copy of this statement in her brief.

On May 22, 2024, this Court directed Appellant to praecipe for entry of judgment, which occurred on June 10, 2024. Appellant appeals from that entry of judgment and raises the following issues on appeal:

1. Did the trial [court] commit an error of law or abuse its discretion in finding that this appeal is interlocutory where the contractual and tort claims were previously bifurcated by the trial court?

2. Did the trial court commit an error of law or abuse its discretion in denying Appellant's motion for summary judgment?

3. Did the trial court commit an error of law or abuse its discretion in refusing to vacate the jury award on Appellant's breach of contract and fraud claims, or in the alternative, order a new trial due to the conduct of Appellee's counsel, the denial of Appellant's motion for summary judgment, the testimony of Gary Lehnus and the court's refusal to permit the testimony of the court reporter to rebut Appellee's claim that part of his testimony was a "typographical error?"

4. Did the trial court commit an error of law or abuse its discretion in permitting Appellee's counsel to suggest, mention and/or claim in open court before the jury that Appellant forged Appellee's name on the November 11, 2020 document that purported to give Appellee $29,000 from the sale proceeds and in furtherance of his claim that there was an oral agreement for a 2/3-1/3 division of the sale proceeds from 1920 Donalds Road, Effort?

5. Did the trial court commit an error of law or abuse its discretion in granting Appellee's motion in *limine* and denying Appellee permission to present rebuttal evidence on Appellee's claim of forgery on both a check and/or the November 11, 2020 handwritten document pertaining to an alleged $29,000 agreement between the parties?

6. Did the trial court commit an error of law or abuse its discretion in requiring Appellant to list rebuttal witnesses in her pre-trial memorandum?

7. Did the trial court commit an error of law or abuse its discretion when it entered an order dated November 30, 2023 which denied Appellee's motion in *limine* seeking to exclude any reference to or admission of the November 11, 2020 document at trial but which allowed Appellee to introduce references to the same document in Appellant's protection from abuse petition against Appellee without identifying the collateral proceeding in which it was made?

8. Did the trial court commit an error of law or abuse its discretion when it permitted Appellee to refer to an alleged agreement that would have given Appellee $29,000 from the sale proceeds from Appellant's home in a collateral proceeding under oath (P.F.A. petition) and denied Appellant's request that either the entire P.F.A. petition be admitted into evidence or that it all be excluded, including references thereto, from trial?

9. Did the trial court commit an error of law or abuse its discretion in dismissing Appellant's fair rental value claim because it said that the parties were living together and also precluded Appellant's real estate expert and his report as a result without considering the benefit to Appellee in living at Appellant's home or the bills incurred in connection thereof?

10. Did the trial court commit an error of law or abuse its discretion in precluding Samantha Smith's testimony at trial and any testimony concerning the November 20, 2020 gun incident except for Samantha Smith's knowledge of any agreement between the parties or Appellant's conversion claim?

11. Did the trial court commit an error of law or abuse its discretion by admonishing Appellant's counsel for asking about the conversion claim listed in Appellee's pre-trial memorandum valued at $25,000?

12. Did the trial court commit an error of law or abuse its discretion in precluding the introduction of Appellee's income tax returns?

13. Did the trial court commit an error of law or abuse its discretion by requiring Appellant's counsel to remove the May 24, 2023 letter from Appellee's counsel that stated that the checks attached to it were supposed to reduce Appellant's claim that Appellee owed money to Appellant for household bills.

14. [Withdrawn]

15. Did the trial court commit an error of law or abuse its discretion in granting Appellee's motion for severance which enabled Appellee to keep certain information from the jury that was pertinent to the breach of contract claim by granting Appellee's motions in *limine*?

16. Was the jury's determination that Appellee committed fraud supported by the evidence?

17. [Withdrawn]

18. [Withdrawn]

19. Did the trial court commit an error of law or abuse its discretion during a side bar during opening arguments in which the trial court told defense counsel to "rein it in" [or words to that effect] but did not do so when Appellee's counsel in both opening and closing arguments stated that the Appellant would say anything to get what she wanted [or words to that effect]?

20. Did the trial court commit an error of law or abuse its discretion by cutting of testimony on contributions to either party's household bills after Appellee testified?

21. [Withdrawn]

Appellant's Br. at 4-8 (suggested answers, other information, and unnecessary capitalization removed).

Appellant's first issue addresses whether this appeal is interlocutory and thus, whether this Court has jurisdiction to hear the appeal. *See Whittaker v. Lu*, 323 A.3d 871, 874 (Pa. Super. 2024) (reiterating that the "appealability of an order goes to the appellate court's jurisdiction") (citation omitted). As jurisdiction presents a question of law, "the appellate standard of review is *de novo*, and the scope of review is plenary." *Id.* (citation omitted).

"This Court's appellate jurisdiction extends to (1) a final order or an order certified by the trial court as a final order; (2) an interlocutory order as of right; (3) an interlocutory order by permission; (4) or a collateral order."

- 7 -

*Id.* at 874-75 (citations and internal quotation marks omitted); *see also* 42 Pa.C.S. § 742 (providing that the Superior Court has jurisdiction over appeals from final orders of the court of common pleas). Appellant claims that the order appealed from is a final order, which is defined as an order that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(a), (b)(1).

Whether Appellant has appealed from a final order depends on whether the trial court "severed" or "bifurcated" Appellant's tort counterclaims from the parties' other claims and counterclaims. Our Supreme Court has explained the difference between bifurcation and severance: "While the two phases of a bifurcated trial are viewed as two halves of a single proceeding, a severance of actions effects a splitting of them into one or more independent actions for all purposes, including trial and appellate procedure." *McCutcheon v. Philadelphia Elec. Co.*, 788 A.2d 345, 350 n.8 (Pa. 2002) (internal citations and quotation marks omitted). Thus, "when two related causes of action have been severed, a final order disposing of only one of them is not interlocutory despite the fact that the other is outstanding." *DiDio v. Philadelphia Asbestos Corp.*, 642 A.2d 1088, 1093 (Pa. Super. 1994) (internal citations and quotation marks omitted). In contrast, where a bifurcated claim remains outstanding, the order is not final, and this Court does not have jurisdiction to address the appeal absent another basis for jurisdiction. *See Levitt v. Patrick*, 976 A.2d 581, 588 (Pa. Super. 2009)

In its opinion, the trial court reasoned that the current appeal "appears to be interlocutory as not all claims in this case have been finally resolved."

Trial Ct. Op. at 2. Noting the then-pending December 2024 trial for Appellant's assault and emotional distress counterclaims, the court opined that an appeal of the current claims "is premature as there has not yet been an order disposing of the entire case." *Id.* at 2-3.

Appellant argues that this Court has jurisdiction because the trial court "bifurcated" the claims. Appellant's Br. at 30-31. She attempts to distinguish this case from appeals that this Court and the Supreme Court have found to be interlocutory, noting that the appeals involved different phases of the same trial, such as liability and damage phases. *Id.* Appellant contends that the claims in this case were intended to be "litigated entirely separately" and, therefore, the instant appeal is not from an interlocutory order; rather, it is an appeal from a final order. *Id*. at 30.

Upon careful review, we conclude that the trial court bifurcated, rather than severed, Appellant's tort claims from the other claims in the case. While we acknowledge that the court phrased its August 3, 2022 order as granting "severance" and that Appellee may have been justified in seeking severance of the distinct sets of claims, we conclude that the court did not, in fact, "sever" the claims into two independent actions. Rather, both sets of claims remained on the same docket.

Moreover, in denying Appellant's post-trial motions, the court expressly denied her motion "on all claims tried to date, with the exception of [Appellant's] tort claims, which will be tried at a later date[.]" Order, 4/23/24. We read this language, as well as the court's opinion, as a clear indication that

the court did not intend to "sever" the tort claims from the contract claims. Accordingly, as Appellant's bifurcated tort claims remain pending, we conclude that we do not have jurisdiction to address the instant interlocutory appeal of the entry of judgment relating solely to the contract claims. We, thus, quash this appeal.[3]

Appeal quashed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/22/25

---

[3] Even if we had jurisdiction to address this appeal, it appears that Appellant would have waived her issues by failing to file a Pa.R.A.P. 1925(b) statement in compliance with the trial court's April 23, 2024 order. Pa.R.A.P. 1925(b)(vii).